UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                          :
HOUSING RESEARCH & ADVOCACY        :       Case No. 1:16-CV-2032
CENTER,                                               :
                                                          :
            Plaintiff,                                 :
                                                          :
    vs.                                                :       OPINION & ORDER
                                                          :       [Resolving Docs. 60, 61, 62, 78, 79,
WXZ RESIDENTIAL GROUP/CIRCLE   :       80, 83, 84, 85, 88]
LOFTS 118 LLC, et al.                        :
                                                          :
            Defendants.                            :
                                                          :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Housing Research & Advocacy Center (the "Center") brings Fair Housing Act ("FHA") and Ohio fair housing claims against Defendants WXZ Residential Group and others.[1] This case concerns the design of three apartment complexes in Cleveland, Ohio and concerns whether those apartment complexes give handicap access.[2]

The parties filed opening briefs as to whether the FHA's "carriage house exemption" applies to 18 of the apartments in question.[3] The parties also filed dueling motions for partial summary judgment.[4]

---

[1] Doc. 44.
[2] *Id*.
[3] Doc. 60 (Plaintiff's opening brief). Docs. 78, 79 (Defendants' opening briefs).
[4] Docs. 61, 62 (Defendants' motions for summary judgment). Doc. 80 (Plaintiff's motion for summary judgment and opposition to Defendant's motion for summary judgment). Docs. 83, 84 (Defendants' replies). Plaintiff filed a motion to strike Defendants' reply briefs. Doc. 85. Defendants opposed. Doc. 88 . While Plaintiff is correct that the Court did not ask for reply briefs, the Court declines to strike the reply briefs because it gives Defendants' reply briefs almost no weight in making its decision.

Case No. 1:16-CV-2032
Gwin, J.

For the following reasons, the Court finds the carriage housing exemption applies to the 18 apartments, **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for partial summary judgment, and **DENIES** Plaintiff's motion for partial summary judgment.

### I. Background

This FHA case primarily concerns the design and construction of three housing developments (collectively, the "Developments") in Cleveland's University Circle area: 118 Flats Circle ("Circle"), 118 Flats Square ("Square"), and 118 Flats Oval ("Oval").

Plaintiff Center operates as an Ohio nonprofit fair housing organization. The Center says numerous housing units in the Developments violate the FHA and Ohio law.[5] Plaintiff says the Developments' apartments "have features—such as steps, thresholds, doors, inaccessible bathrooms and kitchens, and passageways that are too narrow for wheelchairs—that would prevent people who use wheelchairs or other mobility aids from using and enjoying residential units."[6] The Center also asserts that the Defendants discriminate against disabled renters by charging more rent for accessible apartments.[7]

Defendants respond that the FHA does not cover many of the Development's units; therefore, the FHA construction and design rules do not apply.[8] More specifically, the Defendants say the FHA's carriage house exemption removes 18 Development units from FHA

---

[5] Doc. 44.
[6] *Id.* at ¶ 3.
[7] Doc. 80 at 22-24.
[8] Docs. 78 & 79.

2

Case No. 1:16-CV-2032
Gwin, J.

design rules.[9] The Plaintiff disagrees,[10] and each party moves for summary judgment on the carriage house exemption matter.[11]

The Defendants also move for summary judgment as to various statutes of limitations, the FHA's coverage of several other Development units, the Plaintiff's discrimination claim, and the Plaintiff's Ohio law claims.[12]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[13] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[14] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[15] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[16] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[17]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless the record before the court directly

---

[9] *Id.* Defendants say there are fewer than 18 units implicated by this carriage house question, specifically Square's Units 1645-L through 1645-R. Doc. 62 at 11-12; Doc. 78 at 6; Doc. 80 at 16. Because the Court rules in favor of the Defendants as to the carriage house exemption for all 18 units, we decline disentangle this issue.
[10] Doc. 60.
[11] Docs. 61, 62, 80.
[12] Docs. 61 & 62 .
[13] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[14] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[15] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[16] *Id.* at 586.
[17] *Killion*, 761 F.3d at 580 (internal citations omitted).

3

Case No. 1:16-CV-2032
Gwin, J.

contradicts that version.[18] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[19]

### III. Discussion

#### A. Statutes of Limitations do not bar the Plaintiff's claims

The Defendants argue that statutes of limitations bar Plaintiff's FHA claims concerning Circle as well as the Plaintiff's state claims concerning Circle and Square.[20]

The FHA requires a plaintiff to file a complaint "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . whichever occurs last."[21] Ohio fair housing law requires a plaintiff to file a complaint within one year following an alleged unlawful discriminatory practice.[22]

The statute of limitations starts running when a housing development sells[23] or rents[24] its final unit. However, when several housing developments under the same ownership all suffer from non-FHA-compliant construction, then the clock does not begin ticking "until the last unit of all of the implicated developments is sold."[25]

Here, the core issue is whether Circle, Square, and Oval are independent developments.[26]

---

[18] See *Scott v. Harris*, 550 U.S. 372, 380 (2007).
[19] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).
[20] Doc. 61 at 4; Doc. 62 at 9-11.
[21] 42 U.S.C. § 3613(a)(1)(A).
[22] O.R.C. § 4112.051(A)(1). Ohio Courts have looked to federal Fair Housing law for guidance in understanding Ohio's fair housing provisions. *Hous. Advocates, Inc. v. Berardi & Partners, Inc.*, 2010 WL 4905547, at *4 (N.D. Ohio Nov. 29, 2010).
[23] *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 481 (6th Cir. 2006).
[24] *Hous. Advocates*, 2010 WL 4905547, at *7 ("Under the facts of the instant case, the continuing violations doctrine tolls the Fair Housing Act's statute of limitations until the initial rental of the final unit in Emerald Village.").
[25] *St. Andrews*, 210 F. App'x at 481.
[26] The other issue is whether there is non-FHA-compliant construction across the Developments. As the Court understands the briefing, certain FHA compliance claims remain even after the Court resolves the motions for partial summary judgement.

4

Case No. 1:16-CV-2032
Gwin, J.

On one hand, if Circle, Square, and Oval are separate entities, then statutes of limitations would bar the FHA claims against Circle and the state claims against Circle and Square.[27] On the other hand, if there is a reasonable dispute as to whether the developments are independent, then none of the Plaintiff's claims are time-barred.[28]

Plaintiff offers sufficient evidence suggesting that Circle, Square, and Oval are not independent, such that summary judgment is not appropriate on statute of limitations grounds.

Defendants insist that Circle, Square, and Oval are "separate and distinct."[29] However, in an interrogatory, Defendant WXZ Development says it "oversaw the development of the apartments" at Circle, Square, and Oval.[30] Furthermore, the Developments were advertised on the same website,[31] designed by the same architect,[32] and built by the same builder.[33] Finally, Circle, Square, and Oval all have "118 Flats" in their names and are located within a few blocks of one another. A reasonable juror could conclude that Circle, Square, and Oval are a collective under the same ownership.

The Court **DENIES** Defendants summary judgment on statute of limitations grounds.

---

[27] Circle rented its final unit on June 20, 2014, more than two years before the Plaintiff filed its complaint on August 15, 2016. Doc. 62 at 10; Doc. 1. Square's final unit rented August 21, 2104, more than a year before Plaintiff's action. Doc. 62 at 10.
[28] Oval was still under construction when the Plaintiff filed this lawsuit. Doc. 80 at 16.
[29] Doc. 84 at 3.
[30] Doc. 80-4 at 2-3.
[31] Doc. 80-5 (screenshot of the website).
[32] Doc. 80-6 at 2 (admitting that the RDL Architects created the architectural plans for Circle, Square, and Oval).
[33] Doc. 80-4 at 4 (admitting WXZ Construction, LLC was the general contractor for Circle, Square, and Oval).

Case No. 1:16-CV-2032
Gwin, J.

### B.     The carriage house exemption applies to the Developments' 18 units

The parties disagree over whether the carriage house exemption applies to 18 rental apartments located at Circle, Square, and Oval.[34]  Both Parties ask for summary judgment on this issue.[35]

Analyzing this question requires understanding the design at issue.  These dwellings are three stories high, with one apartment on the second floor and one apartment on the third floor.[36]  The first floor is located at grade-level.[37]  The first floor contains two garage units and two storage units so that each apartment on the second or third level has one parking spot and one storage unit. Shared stairs lead from the garage to the second and third floor units.  There is no elevator in the building.

Plaintiff Center says there are 18 dwellings with this design, and the second floor apartment in each such dwelling violates the FHA's accessibility requirements.[38]  The Defendants respond that because of the carriage house exemption, the accessibility requirements do not apply to these 18 units.[39]

Developers and architects may rely on the Fair Housing Design Manual (the "Manual") for guidance.[40]  The Manual includes the Keating Memo ("Memo"), which provides the clearest guidance as to whether the carriage house exemption applies to the 18 units.[41]

---

[34] Docs. 60, 78, 79.
[35] Docs. 61, 62, 80.
[36] Doc. 60 at 9 (referencing the diagram).
[37] In the construction context, grade level refers ground level.
[38] Doc. 60.
[39] Docs. 78 & 79.
[40] Doc. 62-6 at 2 ("Readers following the revised manual can rely on it. They will be in compliance with the Act's accessibility provisions if they carry them out."). *See also*, 24 C.F.R 100.205(e)(2)(ii) (codifying the Manual).
[41] Doc. 60-8.  Although Keating wrote the Memo before the Manual, the Manual cites to the Keating Memo when discussing carriage houses and then includes the Memo in an appendix, thereby incorporating the Memo into codified guidance. Doc. 62-6 at 333.

Case No. 1:16-CV-2032
Gwin, J.

The Memo says that the carriage house exemption applies when "stacked housing units are designed to incorporate parking for each unit into the dwelling unit design in non-elevator buildings."[42] "Specifically," the exemption applies when "the garage footprint is used as the footprint for the remaining floor or floors on the units."[43] Defendants' design falls within the carriage house exemption under the Memo's definition.

Plaintiff Center disagrees. Plaintiff interprets the Memo to say that the carriage house exemption only applies when a second-floor unit sits in the "exact footprint" "over its own garage."[44] Here, two garage units and two-storage areas compose the grade-level while the entire second-floor is a single apartment. Similarly, the entire third-floor is a single apartment. Because each second-floor apartment takes up space beyond a single garage unit's "exact footprint," the Plaintiff argues the carriage exemption cannot apply.

The Manual's carriage house section does not support the Plaintiff's "exact footprint" interpretation of the Keating Memo. The Manual states "[c]arriage houses in which the garage footprint is used as the footprint for the remaining floor or floors of the *units* are not required to meet the design and construction requirements."[45]

Critically, the Manual exempts "units"—rather than a single "unit"—on the "floor or floors" that sit atop the garage's footprint. The text indicates the Manual's authors intended to exempt carriage houses with *units* (plural) on the *floor* (singular) above the *garage footprint*.

The Manual's authors envisioned the possibility of multiple units on the floor above the garage—an exemption broader than what the Plaintiff's "exact footprint" design would allow. For example, the second floor might have two separate apartments, each taking up only half of

---

[42] Doc. 60-8.
[43] *Id.*
[44] Doc. 60 at 7; Doc. 85 at 2.
[45] Doc. 62-6 at 60 (emphasis added). The Manual cites the Memo to support this carriage house definition. *Id.*

7

Case No. 1:16-CV-2032
Gwin, J.

the garage's footprint. Each apartment, however, would be exempt under the carriage house rule. Therefore, the plain text undercuts the Plaintiff's argument that the carriage house exemption applies only to a single unit in the "exact footprint" of its garage below.

Furthermore, the Keating Memo does not support the Plaintiff's "exact footprint" position. Instead, the Memo offers guidance for housing where "the garage footprint is used as the footprint for the remaining floor or floors of the units."[46] The Memo does not stop the Developments' design or endorse the Center's "exact footprint" theory.

Consequently, the Court holds that the carriage house exemption applies to the 18 units.

The Court notes that the Plaintiff offers two additional policy statements to argue that the 18 units fall outside the carriage house exemption: a joint statement from the Department of Housing and Urban Development ("HUD") and the Department of Justice ('DOJ")[47] and the Fair Housing Accessibility First's Frequently Asked Questions on carriage houses.[48] Plaintiff argues the Court must give this guidance *Chevron* deference.[49]

These policy statements do not benefit from *Chevron* deference. "[A]n agency interpretation receives *Chevron* deference only if 'Congress delegated authority to the agency

---

[46] Doc. 60-8.

[47] Joint Statement of the Department of Housing and Urban Development and the Department of Justice: Accessibility (Design and Construction) Requirements for Covered Multifamily Dwelling under the Fair Housing Act, (Apr. 30, 2013), https://portal hud.gov/hudportal/documents/huddoc?id=JOINTSTATEMENT.PDF. ("If an individual stacked flat unit incorporates parking that serves only that unit, and the dwelling footprint is located directly above and within the footprint of the garage below, the unit is treated like a multistory unit without an elevator.").

[48] Doc. 60-7.

> Q: Are carriage house type units--where a dwelling unit is constructed over a garage--covered by the Fair Housing Act design and construction requirements?
>
> A: If an individual stacked flat unit incorporates parking that serves only that unit, and the dwelling footprint is located over the footprint of the garage below, the unit is treated like a multistory unit and is not covered. However, if the stacked flat unit is not in the footprint of the garage below, i.e., where several flat units are located over a common garage, the units are covered, and must be accessible.

[49] Doc. 60 at 7-8, 11; Doc. 80 at 10; Doc. 85 at 3-4.

8

Case No. 1:16-CV-2032
Gwin, J.

generally to make rules carrying the force of law, and . . . the agency interpretation claiming deference was promulgated in the exercise of that authority.'"[50] "Because a policy statement does not speak 'with the force of law,' the Supreme Court has concluded that 'interpretations contained in policy statements . . . do not warrant *Chevron*-style deference.'"[51] Therefore, although mindful of HUD's and DOJ's guidance, the Court cabins its analysis of the 18 units mainly to the Memo and Manual's codified text.[52]

The Court concludes that the carriage house exemption applies to the 18 second floor units and **GRANTS** summary to the Defendants accordingly.

### C. The 12 multistory townhomes at Circle are not covered by the FHA's design and construction requirements

All parties agree that the FHA does not cover Circle's 12 multistory townhomes.[53] The Court agrees, and **GRANTS** summary judgement as to these townhomes.

### D. The FHA does not cover Oval's above grade apartments at Buildings I, II, and IV

Oval consists of four buildings: I, II, III and IV. Buildings I, II, and IV are multi-story apartment buildings with multiple units stacked on top of grade-level units.[54] All parties agree that FHA's rules cover each grade-level unit in these buildings but not the apartments above grade level.[55] Accordingly, the Court **GRANTS** summary judgment to Defendants, finding the

---

[50] *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 727 (6th Cir. 2013) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)).
[51] *Id.* (quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)).
[52] 24 C.F.R. § 100.205(e)(2)(ii).
[53] Doc. 61 at 4; Doc. 62 at 11; Doc. 80 at 7 n.2.
[54] Doc. 61 at 9; Doc. 62 at 12. If the building had an elevator, instead of stairs, it would be covered. 42 U.S.C. 3604(f)(7)(A).
[55] Doc 61 at 9; Doc. 62 at 12; Doc. 80 at 7 n.2.

9

Case No. 1:16-CV-2032
Gwin, J.

FHA's design and construction requirements do not cover Oval's above-grade-level units at Buildings I, II, and IV.

### E. Material fact disputes remain as to Plaintiff's disability discrimination claim

Defendants ask for summary judgment on the Plaintiff's disability discrimination claim.[56] Plaintiff Center says Defendants charge more for disability-accessible apartments while also including fewer amenities.[57]

The Fair Housing Act makes it unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . on the basis of handicap."[58]

Although the Plaintiff fails to label the disability discrimination claim, the Court presumes Plaintiff brings a disparate treatment claim.[59] "To prevail on a disparate treatment claim, a plaintiff must show proof of intentional discrimination."[60] "This can be established either through direct evidence of intentional discrimination or though circumstantial evidence using the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*."[61]

Here, Plaintiff offers evidence that handicap accessible units at Circle are smaller but cost more per square foot than Circle's non-accessible units.[62] Additionally, Circle's non-accessible units include a covered parking garage, whereas the accessible units only have parking "available."[63] Finally, an accessible unit at Square is priced at $295 per month more than the

---

[56] Doc. 62 at 14.
[57] Doc. 44 ¶¶ 35-40; Doc. 80 at 17-19. In their complaint, Plaintiff also says the Defendants have demonstrated a pattern of design discrimination across the Developments. Doc. 44 at ¶ 37c. The part of the Defendants' motion to dismiss does not touch on the design discrimination claim. Doc. 62 at 14.
[58] 42 U.S.C.A. § 3604(f).
[59] Docs. 44 & 80.
[60] *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012) (citing *Nationwide Mut. Ins. Co. v. Cisneros,* 52 F.3d 1351, 1362 (6th Cir.1995)).
[61] *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)).
[62] Doc. 80-1 at 5.
[63] *Id.*

10

Case No. 1:16-CV-2032
Gwin, J.

slightly larger unit directly above it.[64] The Court finds these facts sufficient to support a disparate treatment claim.

Under *McDonnell Douglas*, the burden shifts to the Defendants to offer a legitimate nondiscriminatory reason for the housing decision. Instead, Defendants argue that "nothing in the Fair Housing Act precludes a housing provider from determining what rental rate will be assigned to a particular unit or how parking spaces will be assigned."[65] Defendants also say Plaintiff fails to show any evidence that Defendants actually discriminated against anyone with a disability.[66]

Defendants' arguments fail to show no material issue regarding the price and parking discrepancies. Further, Plaintiff has organizational standing to sue, and can survive summary judgment without evidence that Defendant discriminated against a particular handicapped individual.[67]

The Court find there is a reasonable dispute of material fact as to the Plaintiff's disparate treatment claim. Defendants' summary judgment request is **DENIED**.

### F. Judgment on the Ohio state law claims

The Plaintiff also brings Ohio state law claims that mirror its FHA claims. Ohio courts "have turned to federal Fair Housing Act case law for guidance in analyzing Ohio's fair housing provisions."[68] Therefore, the Court **GRANTS** the Defendants summary judgment on the

---

[64] Doc. 80-8 at 1, 18.
[65] Doc. 84 at 10-11.
[66] *Id.* at 11.
[67] *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 473-76 (6th Cir. 2006). The FHA gives standing to an "aggrieved person" who "believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). Accordingly, the Plaintiff does not need to present a particular person Defendant discriminated against.
[68] *Hous. Advocates, Inc. v. Berardi & Partners, Inc.*, 2010 WL 4905547, at *4 (N.D. Ohio Nov. 29, 2010).

11

Case No. 1:16-CV-2032
Gwin, J.

Plaintiff's Ohio claims concerning the 18 rental units, 12 multistory townhomes, and Oval's above-grade apartments at Buildings I, II, and IV.[69]

### G. Conclusion

For the foregoing reasons, the Court finds the carriage housing exemption applies to the 18 apartments, **GRANTS IN PART** and **DENIES IN PART** the Defendants motion for partial summary judgment, and **DENIES** Plaintiff's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: March 22, 2017.         *s/         James S. Gwin*
                               JAMES S. GWIN
                               UNITED STATES DISTRICT JUDGE

---

[69] Summary judgment on the Ohio claims is only to the extent the Ohio claims overlap with this Opinion's FHA rulings.

12